UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RYAN CALLAHAN, :
    Plaintiff, :
     :
v. : C.A. No. 16-160S
     :
ASHBEL T. WALL, II, et al., :
    Defendants. :

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

    Before the Court for report and recommendation is Plaintiff Ryan Callahan's motion for preliminary injunction and temporary restraining order (ECF No. 23). Plaintiff, who is currently incarcerated at the Rhode Island Adult Correctional Institutions (the "ACI"), has filed a complaint (ECF No. 1) alleging that officials there, acting under color of state law, so neglected and mismanaged his health care as to rise to the level of a violation of the Eighth Amendment of the United States Constitution's prescription against cruel and unusual punishment, in contravention of 28 U.S.C. § 1983. In the present motion, Plaintiff asks the Court to order Defendants, Ashbel T. Wall, II, Dr. Jennifer Clarke and the Rhode Island Department of Corrections (collectively "RIDOC"), to provide him with immediate medical treatment for a painful foot, which he fears will be permanently damaged leaving him disabled if left untreated.

    This matter came on for hearing on September 13, 2016, with Plaintiff appearing telephonically. During the hearing and through a confidential writing provided to the Court shortly after the hearing, RIDOC confirmed that, on the next day following the hearing (September 14, 2016), Plaintiff's painful foot was examined at the ACI by two independent podiatrists, Dr. Fish and Dr. Moniz, in accordance with a referral for treatment that had been

made on July 11, 2016. ECF No. 28-2 at 2-3. Based on this representation, the Court finds that the emergency relief requested by Plaintiff in his motion has been provided; for that reason and for other reasons explained below, I recommend that Plaintiff's motion for preliminary injunction and temporary restraining order be denied.

I.      **Background**

Prior to his incarceration in 2012, Plaintiff suffered an injury that resulted in foot and leg problems. ECF No. 28-3. After he began serving his sentence, Plaintiff was sent to Memorial Hospital on March 18, 2013, for surgery to correct three hammer toes on his left foot that were caused by the pre-incarceration injury. ECF No. 1 ¶ 15. This surgery resulted in the implantation of metal pins in the toes to fixate the bones. ECF Nos. 31-1, 1 ¶ 17. Plaintiff was told by his surgeons, Dr. Mark Kuhar and Dr. Andrew Knudsen, that he would be brought back to the hospital to have the pins removed. On March 26, 2013, Dr. Kuhar visited Plaintiff at the ACI to check on his foot, and wrote an order to "RTC" (return-to-clinic) in one week to have the pins and sutures removed. ECF Nos. 31-1, 1 ¶ 25. Plaintiff was not made aware of this order, as ACI policy precludes inmates receiving advance knowledge of plans to transport them from the facility. ECF No. 31-1.

Plaintiff was never brought back to the hospital or to any outside clinic for the removal of the pins and sutures. An ACI medical report reflects that Plaintiff "refused" to see the podiatrist on April 17, 2013, which Plaintiff vigorously disputes. See ECF No. 28-1 at 2. With the metal pins still in place, on April 21, 2013, Plaintiff went to the ACI infirmary because they were causing him pain and irritation and one of them appeared to be loose. ECF No. 1 ¶ 20. An ACI nurse removed the loose pin, despite Plaintiff's objection. ECF No. 23-1. The following day,

after consulting with Dr. Kuhar by phone, the ACI nurse removed, or at least tried to remove, the remaining two pins – also, as Plaintiff alleges, against his will.  ECF Nos. 1 ¶ 24, 23-1.

Plaintiff claims that RIDOC's failure in April 2013 to bring him back in a timely way to the care of a qualified medical professional for removal of the pins and sutures, as reflected in the surgeon's RTC order, constituted deliberate indifference to his medical needs.  Because the pending motion relates only to the urgent need for medical care in 2016, I have made no findings with respect to the viability of this claim.

Since the events in 2013, through July of 2016, Plaintiff claims that RIDOC's deliberate indifference has continued, in that his foot has been deformed, he has consistently complained of serious pain, he is forced to limp because of constant pain, yet he has received no medical treatment.  ECF No. 23.  However, while claiming that he complained about foot pain throughout the period, during the hearing, Plaintiff conceded that, from the last contact related to his foot in 2013 until July 2016, there is not a scintilla of written evidence to confirm that he ever made a formal request for care for foot pain or that he initiated a written complaint based on the refusal of the ACI to provide care for foot pain.[1]  Faced with evidence of a medical record for the period from 2013 to 2016 reflecting treatment for a range of other medical conditions, as well as records reflecting Plaintiff's anger at not receiving the treatment that he believed he needed for other conditions, e.g., ECF No. 31-1 ("irate" over alleged lack of kidney care), Plaintiff

---

[1] While the record reflects ample correspondence regarding Plaintiff's complaints about medical care from May 2013 until July 11, 2016, none of those presented in connection with this motion specifically refers to serious foot pain.  See ECF No. 1, Exs. G, H, I.  Plaintiff points to several records in which his health issues and complaints are generically referenced; however, the totality of the medical evidence permits the inference that these references to generic medical complaints or issues relate to Plaintiff's other health concerns, and not to foot pain requiring treatment.  See, e.g., ECF No. 31-1 at 6 ("pt was irate that he is not being treated properly, requesting to see a 'real medical doctor' and to be sent to RIH immediately.  He grew louder and belligerent as the interview progressed duet [sic] to concerns for his 'kidneys may fail and no one is doing anything.'").  In light of Plaintiff's admission during the hearing that there are no records reflecting a request for medical care for his foot or a complaint about the denial of medical care for his foot, I find that Plaintiff is unlikely to succeed in proving that any of the generic complaint documents he has proffered (ECF No. 1, Exs. G, H, I) reflect complaints of serious foot pain made between May 2013 and July 2016.

3

acknowledged that his complaints about his foot were never articulated in the form of a request for medical treatment in the same way that he expressed his need for treatment regarding other conditions.

At some point not pinpointed in the record (presumably in 2015), Plaintiff requested his medical records from the ACI; as a result, he claims that he learned for the first time that Dr. Kuhar had left the "RTC" order for him to return to the hospital a week after the surgery to have the metal pins removed.  Based on this discovery, in late December 2015, Plaintiff filed a medical malpractice case in Rhode Island Superior Court against Dr. Kuhar and the ACI nurse who removed the pins.  ECF No. 1 ¶ 35.  Also in December 2015, just before he filed the malpractice case, Plaintiff was corresponding with the ACI's new medical director, Defendant Dr. Jennifer Clarke.  On December 18, 2015, she wrote to him, expressing the hope that he would agree to the plan that he see a podiatrist since he had not seen one since March 2013 and that he follow up with his primary care physician after such an appointment if he was "still having any problems."  Id., Ex. F.  The record is silent regarding what triggered Dr. Clarke's suggestion, what Plaintiff's response was, or what, if anything, was done to implement this "plan."

In January 2016, Plaintiff did see a podiatrist, although there is no evidence establishing that the visit was based on a referral by RIDOC or to permit the inference that Dr. Clarke understood it to be consistent with her suggestion that Plaintiff should see a podiatrist.  As Plaintiff believes, alerted by the service of the medical malpractice complaint against him in Superior Court, Dr. Kuhar *sua sponte* visited Plaintiff in the ACI on January 27, 2016.  Based on Plaintiff's complaint of "discomfort," Dr. Kuhar told Plaintiff that he was ordering an x-ray and suggested that Plaintiff might consider "revision" on his toes as a possibility if symptoms persist;

4

the Kuhar note also reflects that Dr. Kuhar confirmed the absence of complaints of pain to ACI medical staff and records his observation that, "Pt. seems to be walking fine with no apparent limp. No acute distress." ECF No. 1 ¶ 37 & Ex. D. The x-ray Dr. Kuhar ordered was performed the same day; it shows "deformities" related to the prior surgery, but that the fracture had healed and that nothing acute was observed. Id. Ex. E. The record is silent regarding whether Dr. Kuhar reviewed this x-ray or opined that further medical care was indicated as a result of what it shows. What is material to the pending motion is that these records reflect only "discomfort" and there is no evidence that Dr. Kuhar told RIDOC that further treatment of the foot was needed.

Plaintiff claims that the next event occurred on February 24, 2016, when he alleges that Dr. Clarke visited him and told him that his foot "will be treated." ECF No. 1 ¶ 41. In support, he refers to a letter that makes no reference to his foot[2] and that appears to rule out follow-up treatment, stating only that "all of your issues were addressed." ECF No. 1, Ex. I. Dr. Clarke denies that she had an encounter with Plaintiff about foot pain on that day; there is no reference to such an encounter in Plaintiff's medical record. ECF No. 38 ¶ 41; ECF No. 29-1 (affidavit of keeper of RIDOC medical records). Whatever may have happened with Dr. Clarke in February 2016, with no appointment with a podiatrist having been set and no indication that he would be getting treatment for his foot, on March 17, 2016, Plaintiff signed the § 1983 complaint initiating this action.

The final chapter in the history pertinent to the motion begins on July 11, 2016, the date of the first ACI record reflecting a complaint of serious foot pain since the spring of 2013. ECF No. 28-2 at 2-3. On that day, Plaintiff had a scheduled medical appointment with an ACI physician, Dr. Simon Melnick. During the appointment, he told Dr. Melnick that, since the

---

[2] See n.1 *supra*.

removal of the hardware from his foot three years ago, he "has pain, constant, shooting, stubbing, burning pain." Id. at 2. On examination, Dr. Melnick noted "[n]o acute distress," but also "deformity" and "foot pain." Id. at 3. He referred Plaintiff for a routine appointment with a podiatrist. Id. During the hearing, Plaintiff confirmed the accuracy of this medical record, asking only that he did not want this appointment to be with Dr. Kuhar. RIDOC confirmed that the appointment was imminent; in response to an order of the Court, it confirmed in a writing submitted *in camera* (with a copy to Plaintiff) that Plaintiff's foot was examined by two independent podiatrists (Dr. Fish and Dr. Moniz) the next day, on September 14, 2016.

In addition to the evidence discussed above, I have also considered the affidavit of Lieutenant William Galligan, an ACI correctional officer, who averred that he observed Plaintiff vigorously walking in the prison yard with a normal gait and no visible limp throughout the month of July 2016.

**II.  Standard of Review**

A preliminary injunction is an extraordinary remedy, Mazurek v. Armstrong, 520 U.S. 968, 972 (1997), and may only be issued in instances where a plaintiff has no adequate legal remedy, and only on a showing that 1) the plaintiff will suffer immediate and irreparable harm; 2) such harm outweighs any injury to the defendant; 3) the plaintiff has demonstrated that his or her claim is likely to succeed on its merits; and 4) the public interest will not be adversely affected by the injunction. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F. Supp. 2d 317, 326 (D.R.I. 1999). Of these factors, the First Circuit has held that, "[l]ikelihood of success on the merits is the touchstone of the preliminary injunction inquiry." Philip Morris, Inc., v. Harshbarger, 159 F.3d 670, 673 (1st Cir. 1998). Plaintiff's status as a prisoner triggers an additional restriction on the availability of interim injunctive relief that is set forth in the Prison

6

Litigation Reform Act ("PLRA"). 18 U.S.C. § 3626. The PLRA provides that the court shall not enter a temporary restraining order or preliminary injunction unless it finds that the injunctive relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). In addition, the court must respect principles of state and federal comity. 18 U.S.C. § 3626(a)(2). In interpreting the text of § 3626, courts must be guided by Congress's "ambient intent" to curb the involvement of the federal judiciary in the day-to-day management of prisons. Morales Feliciano v. Rullan, 378 F.3d 42, 50 (1st Cir. 2004).

### III.     Analysis, Proposed Findings of Fact and Legal Conclusions

The Eighth Amendment governs the minimal level of medical treatment prisoners must be afforded. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). Based on the fundamental principle that undue suffering unrelated to any legitimate penological purpose is considered punishment proscribed by the Eighth Amendment, Estelle v. Gamble, 429 U.S. 97, 103-05 (1976), prisons may not act with deliberate indifference to the serious medical needs of prisoners. Sires v. Berman, 834 F.2d 9, 12 (1st Cir. 1987). Deliberate indifference includes the failure to provide treatment "once prescribed." Erickson v. Pardus, 551 U.S. 89, 90 (2007) (per curiam). In this Circuit, the principle has been applied in such cases as the 1991 decision in DesRosiers v. Moran, where a trial verdict in favor of prison officials was affirmed because the evidence established sufficient compliance with a physician's prescription for surgical after-care. 949 F.2d 15, 17-20 (1st Cir. 1991). Courts evaluating claims arising under the Eighth Amendment must remain mindful that neither medical malpractice nor inadvertent failure to provide care are of constitutional dimensions; thus, the Eighth Amendment proscribes only care that is "so inadequate as to shock the conscience." DesRosiers, 949 F.2d at 18; Torraco v.

7

Maloney, 923 F.2d 231, 235 (1st Cir. 1991) (quoting Sires, 834 F.2d at 13); see Estelle, 429 U.S. at 102-05 (denial of care must be so unconscionable as to fall below society's minimum standards of decency).  "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." DesRosiers, 949 F.2d at 19.

     To establish that he is likely to succeed on the merits of his Eighth Amendment claim, Plaintiff must demonstrate that his foot pain amounted to a serious medical condition, and that RIDOC was deliberately indifferent to it.  The medical records submitted in connection with this motion reveal that Plaintiff has sought and received extensive medical treatment while at the ACI for ailments ranging from hepatitis C and to cirrhosis, abdominal pain to eye problems; in addition, according to Dr. Clarke, Plaintiff has been seen daily by a nurse to receive medication. ECF No. 28.  This evidence of the level of care afforded to Plaintiff directly contradicts his allegation of deliberate indifference on the part of the ACI staff, and belies the claim that they exhibited an intent "wantonly to inflict pain," as would be required for Plaintiff to establish a claim under the Eighth Amendment.  DesRosiers, 949 F.2d at 19.  Further, between May 2013 and July 2016, Plaintiff has failed to demonstrate that he requested medical treatment for his left foot, that he complained of left foot pain serious enough to require medical treatment or that he was limping or otherwise functioning in a fashion as to render his serious need for medical treatment obvious to a lay person.  ECF Nos. 29-1, 31-1.  And when Plaintiff did make a complaint of serious foot pain in July 2016 to Dr. Melnick, RIDOC responded promptly and appropriately by setting an appointment for Plaintiff to be examined by two independent

podiatrists. Based on these findings, I conclude that Plaintiff is unlikely to succeed on the merits of a claim that RIDOC exhibited deliberate indifference to his medical condition.[3]

Plaintiff's motion for injunctive relief must also fail because the relief he seeks has been provided. Plaintiff's complaint asks this Court for "[a] preliminary injunction ordering the defendants to render adequate medical treatment, by a podiatrist other than Doctor Kuhar, as he is a defendant in a state tort claim filed by Ryan Callahan . . . ." ECF No. 1 ¶ 51. Based on a physician referral made before RIDOC was electronically served with this motion, that is exactly what Plaintiff has already received. Consequently, I conclude that Plaintiff cannot establish a threat of immediate and irreparable harm.

## IV.   Conclusion

Based on the foregoing, I recommend that Plaintiff's motion for preliminary injunction and temporary restraining order (ECF No. 23) be DENIED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 27, 2016

---

[3] As previously noted, these findings do not address the merits of Plaintiff's Eighth Amendment claim arising from the events in April 2013.